REGAN, Judge.
Plaintiff, Lawrence Sampey, employed as an oil field “rough neck”, instituted this suit against defendants, Southern Production Company, Inc., his employer, and the Fidelity and Casualty Company of New York, it insurer, endeavoring to recover workmen’s compensation at the rate of $70 per week for a period of four hundred weeks, $1,000 for medical expenses, 20% of the entire judgment as attorney’s fees, *765 and penalties, for total permanent disability as the result of a back injury which he incurred on May 23rd, 1952, when one of his co-workers dropped the handle of a “slip” weighing two hundred pounds arid he had to “drag it out.”
, The defendants answered denying the occurrence of the accident and, in the alternative, pleaded that if an accident did occur, plaintiff incurred no compensable disability as a consequence thereof.
From a judgment in favor of plaintiff in the, sum of $30 per week for a period of twenty-five weeks, $50 medical expenses and twenty percent attorney’s fees, defendants have prosecuted this appeal. Plaintiff has answered the appeal requesting that the judgment be increased to the amount prayed for.
The record reveals that plaintiff was employed as a “rough neck” or rotary helper on rig No. 15 in Delacroix Island by the Southern Production Company, Inc. Plaintiff related that on May 23, 1952, at approximately 7:30 a. m., while he and one of his co-workers, Donald Guidry, were coming “out of the hole”, Guidry dropped the “slip” (an object having three handles, used for the purpose of holding the pipe to prevent it from falling into the hole, weighing approximately two hundred pounds) and that plaintiff had “to drag it out”; he asserted “I felt something let loose in my back”, but he did not experience any pain until sometime after they were finished work at 8:00 a. m.; thereafter, the crew* consisting of six men, left the rig by boat for Delacroix Island; from there the crew rode in Naquin’s automobile to Martin’s Coffee Shop in St. Claude Avenue and during the course of this ride, he reported the accident to his foreman and driller, Whitney Naquin; he was then informed that if the pain in his back persisted to consult Dr. Francis T. Gidman, the company’s doctor. On the following morning, May 24th, 1952, plaintiff visited the office of Dr. Gidman, who examined him and from the history of the accident given to him by plaintiff, diagnosed the injury as “low back strain” and prescribed heat, massage, sedation and rest. On June 2nd, 1952, plaintiff was discharged and advised to return to his employment. Plaintiff returned and worked one full sixteen hour shift on-June 3rd. ■ On that day, according to Whitney Naquin, the- work in progress on the rig was the laying of drilling. pipes. After June 3rd, plaintiff was told that he would be “laid off”, since, in his absence, another man had been employed arid it was the practice of the company to employ only a six man crew. The decision as to who would be “laid off” was left to the discretion of Naquin who, in testifying as to his choice of a sixth man, related that he had chosen a man whom he considered to be a better worker and possessed of more experience. Thereafter, plaintiff consumed a period of about two weeks in which he continued, in a rather desultory manner, to seek employment with the defendant, which finally culminated in his being assigned to another crew on the same rig, the foreman of which was Thomas Cooper. This employment began on June 21st, and extended through June 30th, 1952, or a period of about ten days, after which plaintiff, without notification to defendant, failed to report for work on July 1st, 1952. Plaintiff explained that he then went to Brownsville, Texas to “try to go shrimping” with his brother-in-law, but after four days in the Gulf he was forced to abandon this occupation because of recurring pains in his back. He -then sought and obtained work in an automotive service station', located in Brownsville, Texas, for a short period, but abandoned this employment because it was both environmentally and personally obnoxious to him. During the latter part of October or the early part of November, 1952, he migrated to Morgan City, Louisiana, where he took a successful pre-employment physical examination; thereafter he entered the service of the Patterson Trucking Lines, the nature of his work was operating a winch truck. He retained this job until Christmas Eve, 1952, which he relinquished for several reasons — because of his back, the employment was not sufficiently remunerative and, finally, he had quarreled with his foreman. He admits that during the course of this em *766 ployment and other employment, he never informed or complained to his co-workers of recurring back pains. Plaintiff then moved on and secured work with the Bay-side Construction Company of Morgan City, Louisiana, where he was employed from January 16th, 1953 until March 13th, 1953, as a welder, the work of which was both laborious and hazardous. It was during this period of time that he initiated correspondence with defendant relative to obtaining compensation for the disability which he said he incurred on May 23rd, 1952, or approximately eight months after the occurrence of the alleged accident. Plaintiff then engaged an attorney and, at his request he was examined -by Dr. Robert Rose of New Orleans. He laboriously endeavored to explain the absence of Dr. Rose as his expert during the course of the trial, by asserting that Dr. Rose had advised him to hospitalize himself in order that he “could tap his spine”, but that he did not have sufficient funds to consummate the examination.
The only evidence which plaintiff offered in his endeavor to corroborate his disability was through the medium of his sister-in-law, Mrs. Leonard Sampey, who testified that she resided in the vicinity of plaintiff’s home in May of 1952, and, therefore, had occasion to see him about three times each week; he -complained to her and others about his persistent back pains. She remembered that plaintiff had borrowed “a belt” from her husband and that he had possession of it for about two months, during which time she knew of her own knowledge that he suffered from his back.
The defendants throughout the course of the trial have adopted the position that no accident occurred and, in the alternative, insist that if an accident did occur plaintiff suffered no compensable disability as a result thereof.
To substantiate the first of these positions defendants offered the testimony of Donald Guidry and Whitney Naquin. Plaintiff, in relating his version of the accident, asserted that these men were present and knew that it had occurred. It was Guidry, a co-worker, according to plaintiff, who “dropped the slip”, and it was Naquin, the driller and foreman of the crew, to whom plaintiff stated he had given an account of the accident and his resulting injury that same morning during the course of a ride to Martin’s Coffee Shop. Guidry and Naquin related that they possessed no personal knowledge of an accident having occurred to the plaintiff on May 23rd, 1952, although they conceded that they had indirectly heard, subsequently, that he had hurt either his leg or his back. Naquin was quite positive that plaintiff never informed him, at any time, that he had incurred injuries to his back by virtue of an accident on the morning of May 23rd, 1952.
Thomas Cooper, the foreman of another crew of which plaintiff was a member, related that he had worked under him from June 21st, to June 30th, 1952, during which time he never complained of recurring pains in his back, although he also admitted that he had indirectly heard that plaintiff had suffered a back injury.
In order to substantiate defendants’ con-contention that if an accident did occur, plaintiff suffered no compensable disability as a result thereof, Dr. Francis T. Gidman related, through the medium of a deposition, that plaintiff visited his offices in West-wego, on the morning of May 24th, 1952; that he examined him and his diagnosis of “strain of the low back” was based primarily on subjective symptoms; no severe injury was disclosed by the examination and, therefore, conservative treatment was prescribed which consisted of heat and massage. Plaintiff visited his office on May 24th, 26th, 28th, and June 2nd, 1952; progressive improvement was noted from plaintiff’s statements to him, therefore, no further laboratory studies, such as X-rays, were indicated. He said that on June 2nd, 1952, ten days after he initially examined plaintiff the range of motion in his back was found to be normal and the patient informed him that he felt well and no longer complained of any back pain. He, therefore, discharged him to return to work the following day; however, Dr. Gidman pointed out that on one or more *767 of the four visits which plaintiff made to his office, he requested him to return for additional treatment if the back pain recurred, but after June 2nd, 1952, he heard nothing more from the plaintiff.
Dr. George C. Battalora, an orthopedic specialist, testified that he examined plaintiff, at the request of the defendants, in April, 1953. After having made a thorough examination of plaintiff including the taking of X-rays, he’ was of the following opinion:
“From the history (given to him by plaintiff) he probably had sustained a low back strain. From the examination, however, I could not find any evidence of this being present when I examined him. In other words, if he had sustained a lumbosacral strain, then it cleared up by the time he had been examined by me.
* * * * * *
“* * * I concluded that this patient should be able to resume his previous occupation.”
The court below was obviously of the opinion that an accident did occur and that the plaintiff incurred compensable disability to the extent of twenty-five weeks as a result thereof. We are fully cognizant of the principle that on questions of fact and the credibility of witnesses the trial court’s findings should be given great weight and are not to be reversed on appeal except where manifest error exists, however, a careful analysis of the record has convinced us that plaintiff has failed to prove by a preponderance of the evidence, nay any testimony but his own, that an accident did occur on May 23rd, 1952, and this conclusion is substantiated by virtue of the testimony of Guidry and Naquin, who were working with plaintiff on that date, and who were in a position to actually see the accident if one occurred. In fact, the whole context of the record has left us with an indelible conviction that plaintiff’s co-workers were disdainful and unsympathetic to this effort to collect compensation. Surely, this is in itself unusual. It will likewise be recalled that plaintiff waited approximately eight months after the alleged accident before asserting this claim, which, per se, created an element of suspicion. In the last analysis, the tenor of the record, insofar as plaintiff is concerned, fails to reflect a complete thread of credibility. However, assuming arguendo, a position most favorable to the plaintiff that an accident did occur on the date alleged, the only medical testimony in the record, a resume of which appears here-inabove, convinces us that plaintiff suffered no compensable disability resulting therefrom, for which he has not already been paid.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of defendants dismissing plaintiff’s suit at his cost.
Reversed.